UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN MARINE SALVAGE AND
SERVICES, INC.,
     Plaintiff,

v.

                                                   Case No. 06-13525

MCKEIL MARINE LTD.,
     Defendant.                   Honorable Patrick J. Duggan
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on May 31, 2007.

PRESENT:      THE HONORABLE PATRICK J. DUGGAN
                    U.S. DISTRICT COURT JUDGE

On July 10, 2004, the tug "Evans McKeil," while towing the barge "Ocean Hauler," ran aground in the St. Clair River, causing debris, including pilings and parts of docks, to be set adrift. MI Marine Salvage and Services, Inc. ("Plaintiff") was engaged to remove the debris and initiated this lawsuit against McKeil Marine Ltd. ("Defendant"), the owner of the Evans McKeil, seeking payment for the debris removal. Plaintiff's First Amended Complaint asserts the following three counts: Count I (Admiralty); Count II (Contract); Count III (Quantum Meruit). Presently before this Court is Defendant's motion for summary judgment. The Court held a hearing on Defendant's motion on May 22, 2007.

## I.   Standard of Review

This Court will grant summary judgment "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). The moving party bears the burden of informing this Court of the basis for its motion and identifying those portions of the record that establish the absence of a material issue of fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to look beyond the pleadings and designate specific facts showing that a genuine issue exists for trial. FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 322-24, 106 S. Ct. at 2552-53. It is not enough that the nonmoving party comes forward with the "mere existence of a scintilla of evidence . . . ," *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512, or some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Rather, the nonmoving party must present significant probative evidence in support of its opposition to the motion for summary judgment. *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

## II. Applicable Law and Analysis

### B. Statute of Limitations

Defendant contends that all of Plaintiff's claims are time-barred pursuant to 46

U.S.C. App. § 730, which provides:

> A suit for the recovery of remuneration for rendering assistance or salvage services shall not be maintainable if brought later than two years from the date when such assistance or salvage was rendered, unless the court in which the suit is brought shall be satisfied that during such period there had not been any reasonable opportunity for arresting the assisted or salved vessel within the jurisdiction of the court or within the territorial waters of the county in which the libellant resides or has his principal place of business.

46 U.S.C. App. § 730 (2006), *codified and amended by* 46 U.S.C. § 80107 (October 6, 2006).[1] It is undisputed that Plaintiff completed the removal work by or on July 20, 2004. Plaintiff filed its initial complaint on August 7, 2006, which is over two years after the last day it completed the debris removal. Thus, if § 730 applies to all of Plaintiff's claims, this action is time-barred.

In its response and supplemental briefs, Plaintiff admits that there is merit to Defendant's contention that Count I is time-barred. (Resp. Br. at 4; Supp. Br. at 2). In Count I, Plaintiff specifically invokes the Court's admiralty jurisdiction in the manner prescribed by Rule 9(h) of the Federal Rules of Civil Procedure. (First Am. Compl. ¶ 1). Furthermore, in Count I, Plaintiff specifically alleges that it performed a "salvage service" and seeks payment for those services. (*Id.* ¶¶ 6-7). Thus, the Court concludes that § 730 applies to Count I of Plaintiff's First Amended Complaint.

At the hearing and in its briefs, Defendant argues that the plain language of § 730

---

[1] As indicated § 730 was codified and amended by 46 U.S.C. § 80107(c), which became effective on October 6, 2006, after Plaintiff initiated this lawsuit. At the hearing and in their brief, the parties cite § 730. Thus, for the purposes of this Opinion and Order, the Court will refer only to § 730.

3

applies to Counts II and III of Plaintiff's Complaint.  More specifically, Defendant asserts that these counts fall within the "rendering assistance" language of § 730.  Furthermore, Defendant contends that an alleged contract entered into between the parties was a maritime contract, citing *Exxon Corp. V. Central Gulf Line, Inc.*, 500 U.S. 603, 611 (1991).  Finally, Defendant, citing *Suarez Corp. Indus., Inc. v. R.M.S. Titanic*, 130 F. Supp. 2d 558 (S.D.N.Y. 2001), argues that because Plaintiff's "Contract" and "Quantum Meruit" claims sound in admiralty, substantive maritime law, including § 730, must apply to these claims.

Counts II and III of Plaintiff's First Amended Complaint are entitled "Contract" and "Quantum Meruit."  In Count II, Plaintiff alleges that it removed the debris pursuant to an oral agreement with Defendant, and despite being billed for these services, Defendant has not paid Plaintiff.  (*See* First Am. Compl. ¶¶ 9-15).  Plaintiff invokes diversity jurisdiction to bring Count II.  (*Id.* ¶ 10).  In Count III, Plaintiff seeks payment for the reasonable value of its services, presumably brought in the alternative to its breach of contract claim.  (*See id.* ¶¶ 16-20).  There is no specific jurisdictional basis alleged in Count III.  (*See id.*).

As stated above, the two-year limitations period in § 730 applies to "suit[s] for recovery of remuneration for rendering assistance . . . ."  46 U.S.C. App. § 730.  While Plaintiff's "Contract" and "Quantum Meruit" claims may arguably fall within this language, this Court believes that, reading the language of § 730 as a whole, it was not meant to encompass Counts II and III.  This is evident by the subordinate clause in § 730, which provides in pertinent part: "unless the court in which the suit is brought shall be satisfied that during such period there had not been any reasonable opportunity of

4

arresting the assisted or salved vessel . . . ." *Id.* In the subordinate clause, "assisted" modifies "vessel," which leads this Court to conclude that to invoke the "rendering assistance" language the assistance must be rendered to the vessel itself. *See id.* This conclusion is supported by the meaning of "salvage service," which is defined as "[t]he aid or rescue given, either voluntarily or by contract, *to a vessel* in need of assistance because of present or apprehended danger." BLACK'S LAW DICTIONARY 1340 (7th ed. 1999)(emphasis added).

At the hearing, Plaintiff stated that it did not render any assistance to the Evans McKeil or the Ocean Hauler. Rather, it removed debris set adrift when the Evans McKeil and the Ocean Hauler ran aground. Therefore, this Court does not believe the "rendering assistance" language of § 730 applies to Counts II and III of Plaintiff's First Amended Complaint.[2]

Furthermore, this Court is not persuaded by Defendant's reliance on *Suarez*. The plaintiff in *Suarez* provided "funding and services" for a "salvage expedition." 130 F. Supp. 2d at 559-60. After the expedition, a dispute arose as to the amount owed to the plaintiff, leading the plaintiff to bring an action asserting claims of "breach of contract, fraudulent misrepresentation, conversion, quantum meruit, and the like . . . ." *Id.* at 560. The plaintiff's suit was filed "pursuant to federal maritime jurisdiction" and all of its claims "related to the funding and rendering of salvage services." *Id.* Applying § 730, the court held that the plaintiff's lawsuit was barred. *Id.*

---

[2] In addition, if Congress intended § 730 to apply to "Contract" and "Quantum Meruit" claims, it could have said so, but it did not.

Plaintiff in this case did not bring Counts II and III pursuant to federal maritime jurisdiction, *see* FED. R. CIV. P. 9(h), and unlike the breach of contract and quantum meruit claims in *Suarez*, Counts II and III are not related to the "rendering of salvage services." Thus, this Court does not believe *Suarez* is instructive.

Finally, because Counts II and III are not governed by the plain language of § 730, this Court need not determine if any contract entered into between the parties was a maritime contract.

**B.  Tolling**

With respect to Count I, Plaintiff argues that the two-year statute of limitations should be tolled for two reasons. First, Plaintiff contends that it did not have a reasonable opportunity to arrest Defendant's vessel. Second, Plaintiff contends that the parties were involved in settlement negotiations after it performed the debris removal and was led to believe that any claim it had against Defendant would be settled; thus, it asks the Court to equitably toll the two-year statue of limitations.

Defendant has provided evidence that Plaintiff had many opportunities to arrest the Evans McKeil and the Ocean Hauler. The deposition testimony of William Leslie, the owner of MI Marine Salvage and Services, Inc., reveals that Plaintiff was aware that the Evans McKeil and the Ocean Hauler were frequently running between Sarnia, Ontario and Detroit, Michigan in 2004. (Dft.'s Br. Ex. A, William Leslie Deposition at 120). Furthermore, in his affidavit, William Duffy, Defendant's Vice President of Operations, stated that "[f]rom July 20, 2004 through the end of the 2004 shipping season, the tug Evans McKeil and barge Ocean Hauler made at least 56 voyages through U.S. waters

including the waters of Lake Huron, Lake St. Clair, Lake Erie and the Detroit River."
(Dft.'s Rep. Br. Ex. D ¶ 3). In addition, Mr. Duffy stated that "[d]uring the seasons of 2005 and 2006, the tug Evans McKeil made multiple voyages through U.S. waters including Lake Erie, the Detroit and St. Clair Rivers, Lake Huron and Lake Michigan." (*Id.* ¶ 4). Based on this evidence, which Plaintiff does not rebut, this Court does not believe that there is a genuine issue of material fact that Plaintiff had reasonable opportunities to arrest Defendant's vessel. Thus, Plaintiff is not entitled to tolling on this basis.

Plaintiff's second assertion that the statute of limitations should be tolled based on the parties settlement negotiations is also unpersuasive. The cases relied on by Plaintiff in support of its equitable tolling argument involved agreements that were later dishonored. *See Platoro Ltd., Inc. v. Unidentified Remains of a Vessel*, 614 F.2d 1051, 1054-55 (5th Cir. 1980)(holding that the two-year statute of limitations formerly set forth in 46 U.S.C. § 730 was tolled after Plaintiff negotiated an agreement which was later dishonored); *Jackson v. Costa Lines, Inc.*, 490 F. Supp. 393, 397 (S.D. Fla. 1980)(holding that the two-year statute of limitations formerly set forth in 46 U.S.C. § 730 was tolled until the plaintiff learned that the defendant would not honor their previous settlement agreement). Here, the evidence proffered by Defendant suggests that any settlement negotiations were brief and Plaintiff could not have been deceived into believing that this claim would be settled. In his affidavit, Mr. Duffy stated that a single face-to-face meeting between the parties' principals occurred in August 2004. (*Id.* ¶ 6). According to Mr. Duffy, this meeting "lasted less than five minutes and ended with the exchange of

harsh words between the parties." (*Id.*).

In conclusion, based on the evidence in the record before the Court, the statute of limitations began to run on July 20, 2004, the date Plaintiff completed the removal of the debris. Because Plaintiff did not file its initial complaint until August 7, 2006, over two-years after the completion of the salvage services, Count I is time-barred by § 730. Counts II and III, however, do not fall within the language of § 730.

Accordingly,

**IT IS ORDERED**, that Defendant's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**, in that Defendant's motion for summary judgment as to Counts II and III of Plaintiff's First Amended Complaint is **DENIED**, but Defendant's motion for summary judgment as to Count I of Plaintiff's First Amended Complaint is **GRANTED**.

                                                s/PATRICK J. DUGGAN
                                                UNITED STATES DISTRICT JUDGE

Copies to:
James M. Hacker, Esq.
Brian J. Miles, Esq.